**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Doris Ann Randall, | No. CV-13-02025-PHX-NVW |
| Plaintiff, | **ORDER** |
| v. | |
| Social Security Administration Commissioner, | |
| Defendant. | |

Plaintiff Doris Ann Randall seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.   BACKGROUND**

Plaintiff was born in February 1953. She has a high school education and has worked as a collections coordinator, data entry clerk, office clerk, and administrative assistant. She is obese and has type II diabetes, diabetic neuropathy, and chronic kidney disease. She has had stent surgery related to coronary artery disease. She had a full knee replacement on her left knee in March 2011 and on her right knee in April 2012, one

month before the administrative hearing before the ALJ. At the time of the hearing Plaintiff was still using a walker following the right knee replacement.

On June 5, 2010, Plaintiff applied for disability insurance benefits, alleging disability beginning April 8, 2010. On May 17, 2012, she appeared with a non-attorney representative and testified at a hearing before the ALJ. An impartial vocational expert also testified.

On June 26, 2012, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On October 7, 2013, Plaintiff sought review by this Court.

## II.   STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted); *accord Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

### III. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014, and that she has not engaged in substantial gainful activity since April 8, 2010, the alleged onset date. At step two, the ALJ found that Plaintiff has the following severe impairments: diabetes mellitus with diabetic neuropathy, coronary artery disease status post myocardial infarction with stent surgery, obesity, bilateral knee replacement surgery, and stage three chronic kidney

disease. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Plaintiff:

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: the claimant can occasionally push and/or pull with the lower extremities; the claimant can occasionally climb using ramps and stairs; the claimant cannot climb using ladders, ropes or scaffolds; the claimant can frequently balance and stoop; the claimant cannot kneel or crawl; the claimant can occasionally crouch; the claimant can frequently perform handling, fingering and feeling; the claimant must avoid hazardous environments.

The ALJ further found that Plaintiff is capable of performing her past relevant work as an administrative assistant as it is generally performed in the national economy.

## IV. ANALYSIS

### A. The ALJ Did Not Err in Evaluating Plaintiff's Credibility.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). In making a credibility determination, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (internal quotation marks and citation omitted). But "an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." *Id.*

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment.  The ALJ noted, but did not find conclusive, that Plaintiff had received unemployment compensation during the relevant period, which required her to certify she was willing and able to engage in work activity, a certification inconsistent with a claim for disability.

Plaintiff testified that she was terminated from her last job in April 2010 because of her absenteeism due to illness.  She said she had been hospitalized in December 2009 for her thyroid and in January 2010 for her blood pressure and diabetes.  She said she was on short-term disability leave until the end of March 2010 and terminated on April 8, 2010.  At the hearing in May 2011, Plaintiff testified that her primary problem is diabetic neuropathy although she also has lower extremity edema that gets worse with sitting, standing, and walking.

Plaintiff testified that she has neuropathy from her toes to her hips, which prevented her from realizing that her knees were so bad, but finally she had left knee replacement surgery in March 2011.  Although her right knee worsened in 2011, she waited until April 2012 to have right knee replacement surgery because of some family issues.  At the hearing in May 2012, Plaintiff said her knees were feeling better, but her neuropathy was getting worse.  She wondered if the knee pain had disguised the neuropathy pain and now she was feeling the neuropathy more.  She testified that after the March 2011 surgery she was able to quit using a walker in May 2011, but began using a cane in August 2011 and went back to using a walker in January or February 2012.  She used a walker at the administrative hearing one month after the right knee replacement surgery.

Plaintiff testified that she could feel her feet, but they are "numb and tingly" and she has pain from her calf to her hip.  She also said she has to look down at her feet when

walking because she cannot feel them, yet she continued to drive a car until her recent knee replacement surgery. She testified that she has numbness in two fingers on each hand, and she has difficulty typing because she does not know which keys her fingers are hitting, but she has no problem buttoning buttons, tying bows, or using zippers. She said she also has lots of lower back pain due to arthritis, but if the pain goes down to her legs she cannot tell because of the neuropathy.

Plaintiff testified that she gets shortness of breath when she walks and when she does housework. In April 2010, Plaintiff was advised regarding a diet plan to manage her diabetes and chronic kidney disease, and she reported that she avoids processed food and "cooks meals from scratch." In April 2011, Plaintiff was advised by a cardiovascular nurse practitioner to stop smoking, exercise as tolerated, and decrease her calorie intake.

The ALJ found the Plaintiff's allegations regarding the severity of her symptoms and limitations diminished because the allegations are greater than expected in light of the objective evidence of record. The ALJ noted in detail numerous records showing normal or negative findings and normal functioning.

The ALJ found Plaintiff's allegations regarding the severity of her symptoms and limitations inconsistent with records of generally successful treatment during the relevant period. The ALJ noted records showing Plaintiff's improvement after both knee replacement surgeries, cortisone injections, and physical therapy. Moreover, the ALJ identified in detail numerous records showing Plaintiff reported that she was feeling better and was not taking pain medication.

The ALJ found Plaintiff's credibility was further undermined by her activities of daily living, which were compatible with competitive work. In August 2010, Plaintiff reported that she cooked, washed dishes, watched television, and used a computer. She said that she drove to get prescription medications about every two weeks and to get groceries about once a month. She said that she did laundry, but it took her a day to do one load. She said that she had difficulty doing housework more than thirty minutes at a time because of pain, numbness, and burning sensation. She reported sleeping from zero

to fourteen hours a day and taking naps one to three times a day for one to four hours each, depending on her pain. Plaintiff also said she wore glasses for reading and computer work and she used a cane and walker to assist with her balance.

Plaintiff testified that she is able to perform personal care independently. She said she has a shower bench to get in and out of the bathtub. She also testified that before the right knee replacement surgery (one month before the hearing) she did her own minor shopping and drove to medical appointments. She said that her daughter had been doing Plaintiff's major grocery shopping for the past five or six months, *i.e.*, the period during which she was postponing her right knee replacement because of family issues.

Plaintiff contends that the ALJ erred by failing to consider the fact that Plaintiff worked consistently for 25 years as part of the credibility determination. The ALJ must consider all of the information presented about a claimant's symptoms, including information about a claimant's prior work record, but the ALJ is not obligated to identify each piece of information considered and explain the weight given to each. 20 C.F.R. § 404.1529(c)(3).

Thus, substantial evidence supports finding that the ALJ provided specific, clear, and convincing reasons for partially discrediting Plaintiff's subjective symptom testimony.

**B.    The ALJ Did Not Err in Determining Plaintiff's Residual Functional Capacity.**

A claimant's residual functional capacity is "what an individual can still do despite his or her limitations." Social Security Ruling 96-8p. The residual functional capacity determination is "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* A residual functional capacity finding involves a detailed assessment of how a claimant's medical impairments affect his ability to work. In determining a claimant's residual functional capacity, the ALJ "must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and 'the effects of all symptoms, including pain, that are

reasonably attributed to a medically determinable impairment.'" *Robbins v. SSA*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ found Plaintiff has the residual functional capacity to perform "sedentary work as defined in 20 CFR 404.1567(a)" with certain exceptions. "Sedentary work" is defined as involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools" and requiring primarily sitting with only occasional walking and standing. The ALJ imposed the following limitations on sedentary work: no climbing using ladders, ropes, or scaffolds; no hazardous environments; only occasionally pushing and/or pulling with the lower extremities; only occasionally using ramps and stairs; only occasionally crouching; frequently, but not continuously, balancing and stooping; frequently, but not continuously, handling, fingering, and feeling.

Plaintiff contends the ALJ erred by not including in the residual functional capacity any limitations resulting from her use of a cane or walker, such as her ability to handle, finger, or feel while standing and walking. Plaintiff testified that she used a walker or cane inconsistently throughout the relevant period, primarily shortly before and after knee replacement surgeries. She testified that her knee pain appeared to be resolved by the surgeries. Plaintiff has not identified any objective evidence or medical opinion to support finding that Plaintiff continues to need to use a walker or cane on a long-term basis. But it was unnecessary for the ALJ to find that Plaintiff did not need a walker or cane because sedentary work requires only occasional lifting and carrying of small items, which could be transported on a belt, in a pocket or shoulder bag, or by pushing a wheeled cart—as Plaintiff likely does when grocery shopping. Plaintiff's ability to cook meals, "pick up" after herself, and carry laundry demonstrates that she is capable of occasionally lifting and carrying small items regardless of whether she uses a walker or cane.

Plaintiff further contends the ALJ erred by finding that she is capable of sitting for up to six hours in an eight-hour work day because she testified that if she sits for a long

period of time her legs swell and she is taking Lasix to control her edema. In fact, Plaintiff testified that if she sits, stands, or walks too long her "ankles, feet, and legs swell up like four times their size and that's why I'm taking the Lasix." Even if the ALJ found her testimony fully credible, Plaintiff suggested that Lasix and frequent urination controlled the edema. But in fact, the ALJ identified objective medical evidence contradicting Plaintiff's allegation regarding the severity of her edema.

Plaintiff also contends the ALJ erred by failing to acknowledge that she has severe numbness in two fingers on each hand and spasms that prevent her from effectively using a computer keyboard. Plaintiff testified that she had no problem with buttons or zippers or tying bows. She also reported that she uses a computer. Further, the evidence Plaintiff identifies as supporting her claims of numbness do not show that anyone tested and found neuropathy in her fingers or opined that she is unable to use a computer keyboard. In March 2009, Plaintiff reported left leg pain and numbness and that her endocrinologist told her she needed a neurology consultation for diabetic neuropathy. In an emergency room in November 2010 Plaintiff complained of tingling over the left hip and left foot with intermittent sharp pains in the sole of her foot. She reported a history of diabetic neuropathy, but said she had "never had anything like this before," and it was different than the diabetic neuropathy. In December 2010, Plaintiff reported to her neurologist left leg pain, which was improving, and "no complaints of new weakness, sensory loss, visual changes," or "new involuntary movements." In January 2011, Plaintiff reported to her neurologist "resolution of her previously described left leg pain" and "no complaints of new weakness, sensory loss, visual changes," or "new involuntary movements." The neurologist wrote: "Diabetic radiculopathy resolved." In April 2011, she reported "tingling/burning of feet, numbness/tingling of hands," but demonstrated normal gait and normal range of motion of extremities. The notes for July 2011 say the same. As the ALJ noted, in May 2011 Plaintiff told her physical therapist she sits at her computer throughout the day.

1  The ALJ did not err in determining Plaintiff's residual functional capacity.  The
2 ALJ provided a narrative description of how the evidence supports each conclusion in the
3 residual functional capacity assessment and explained any inconsistencies or ambiguities
4 in the evidence.  The ALJ expressly "generously considered the claimant's subjective
5 complaints of numbness and tingling in the extremities and swelling of the lower
6 extremities" and included related limitations despite the medical records showing only
7 "objective findings of +1 edema and minimal complaints of hand numbness or pain."
8  IT IS THEREFORE ORDERED that the final decision of the Commissioner of
9 Social Security is affirmed.  The Clerk shall enter judgment accordingly and shall
10 terminate this case.
11  Dated this 24th day of October, 2014.

Neil V. Wake
United States District Judge